UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
SEP 08 2014

PER_____
DEPUTY CLERK

NEFTALI T. BLISS,                    :
                                     :
            Plaintiff                :
                                     :
      v.                             : CIVIL NO. 3:CV-12-2254
                                     :
UNITED STATES, et al.,               : (Judge Kosik)
                                     :
            Defendants               :

## MEMORANDUM

Plaintiff, Neftali T. Bliss, files this matter as a combined Bivens-styled[1]

complaint pursuant to 28 U.S.C. § 1331, and complaint under the Federal Tort Claims

Act, 28 U.S.C. § 1346(b).  Presently pending are motions to dismiss and for summary

judgment filed by the United States and Bureau of Prisons (Doc. 20) and a group of

the individual defendants (Doc. 21).  Also pending is Plaintiff's motion for discovery

(Doc. 53) and Defendants' motion for a protective order (Doc. 54).  Plaintiff has also

filed a motion to strike the exhibits submitted by Defendants United States and BOP in

---

[1] See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,
403 U.S. 388 (1971).  Bivens stands for the proposition that "a citizen suffering a
compensable injury to a constitutionally protected interest could invoke the general
federal-question jurisdiction of the district courts to obtain an award of monetary
damages against the responsible federal official."  Butz v. Economou, 438 U.S. 478,
504 (1978).

support of their motion to dismiss and for summary judgment (Doc. 61).[2]  For the

reasons which follow, the motions to dismiss will be granted only to the extent that

Plaintiff will be afforded the opportunity to file an amended complaint limited to the

claims included in his original complaint, but alleging facts in support of his general

claim of conspiracy between the Defendants.  All other pending motions will be

dismissed as moot, and without prejudice to refile the motions, following the

submission of an amended complaint.

## I.   Background

On May 14, 2013, this action was construed as a combined §1331 civil rights

action and action under the Federal Tort Claims Act.  Named as Defendants are the

United States, the Bureau of Prisons, 14 Doe Correctional Officers at the Low Security

Correctional Institution at Allenwood, and the following LSCI-Allenwood employees:

Warden Scism, Former Warden Strada, Assistant Warden Sauers, Captain Feltman,

Former Unit Manager Netzband, Lieutenants Persing, Olshansky, Danner and

Klinefelter, and Correctional Officers Thompson, Russell, Myers, Rohrer, Hause,

Stephens, Schafer, Kresock, Laubaugh, Kline, Getz, Miller and Clester.  Also named

as Defendants are Physician's Assistant Peggy Moore, Health Services Administrator

---

[2]  Plaintiff also filed a motion for enlargement of time within which to file his statements of facts and briefs in opposition to Defendants' motions to dismiss/for summary judgment.  (Doc. 57.)  Thereafter, Plaintiff filed his opposing documents.

Spotts, Dr. Miller and SIA Agent Schantz.[3]

In the complaint, Plaintiff alleges that he arrived at LSCI-Allenwood on July 12, 2010. Plaintiff questioned why he was not assigned to a minimum security facility and requested to be relocated to a facility that reflected his custody classification points. His Unit Team explained that he had a "Management Variable For Greater Security." (Doc. 1, Compl. at 4.) Plaintiff claims this designation was placed on him without any justification, and there was an agreement between Defendants Thompson and Netzband to undermine his quality of living through all means available to them as his Unit Team and the officers working in the housing unit. (Id. at 4-5.) Defendants did not respond to his Inmate Requests challenging his classification, and told him there were no grievance forms. This took place from late July 2010 to late November 2010. (Id. at 5.)

Sometime between August and October of 2010, Plaintiff was taken to the Lieutenant's Office and informed that an anonymous threat was made on his life. Plaintiff stated he was unaware of any problems with anyone. He was returned to his cell and told to contact staff if he felt threatened. On November 22, 2010, he was again informed of an anonymous threat and placed in SHU protective custody while an

---

[3] Service was returned unexecuted with respect to the 14 Doe Defendants. Also, service has not been achieved on Defendants Getz, Miller, Myers and Stephens. The motion to dismiss/for summary judgment filed by the individual defendants is not filed on behalf of those defendants who have not been served.

investigation was conducted as to whether Plaintiff had been involved in a fight.

Plaintiff claims that this was a fabricated accusation to deter him from challenging his

custody classification. (Id. at 7.) When Defendant Myers escorted him to a cell,

Plaintiff informed him that he had a bottom bunk pass due to a back problem. Myers

told him there were no other bunks available and that he would have to sleep on a top

bunk. (Id.) The following day, Plaintiff also told Defendant Rohrer about his health

issues and his bottom bunk pass. He also informed Rohrer that he had slept on the

floor the previous evening. Rohrer and the rest of the SHU staff did nothing about the

matter. Requests for Request to Staff forms were ignored, but Plaintiff was told to use

lined white paper to submit any requests.

On November 25, 2010, the Assistant Warden and a Lieutenant asked Plaintiff

why he was lying on his cell floor. Plaintiff also sent cop outs to Defendant Persing.

He believes Rohrer tampered with and delayed delivering his cop outs.

From November 26, 2010 to December 28, 2010, Plaintiff claims he was kept in

his cell 24 hours a day and denied his one hour of recreation. Defendant Rohrer is

alleged to have harassed Plaintiff, because he mentioned Rohrer's name to the

Assistant Warden several days earlier. On December 2, 2010, Plaintiff was told to

pick the mat up off the floor where he had been sleeping and put it back on the top

bunk. He was threatened with sanctions by Rohrer if he did not comply. Defendant

Hause also threatened him with "physical abuses." (Id. at 10.)

4

Plaintiff explained his medical restriction of top bunk and no lifting of over 15 pounds to Defendant Danner on or about December 3, 2010. He also informed him of the threats and abuses taking place. He was told to write to Defendant Persing. Plaintiff did so, but received no response. On December 23, 2010, Plaintiff spoke with Defendant Feltman about the above matters. No changes were made.

On December 25, 2010, Plaintiff believes he was punished when he received a Christmas Day meal different from those given to the other inmates. Plaintiff's meal consisted of undercooked chicken. Defendant Myers agreed and said he would contact Food Services. Defendant Olshansky came to retrieve the meal. No substitute meal was ever received.

On December 30, 2010, after 37 days of being forced to climb up to the top bunk, Plaintiff alleges that the pain and numbness in his back and legs became worse. He informed Defendants Hause and Stephens that he needed medical attention. They told him not to press the duress button again, and they failed to obtain prompt medical care for him. (Id. at 13.) However, a half hour later Defendants Hause, Stephens and Moore came to his cell. Moore said that he would need to be seen in the medical department, but did nothing for his pain. Plaintiff claims that when Hause cuffed him through the wicket, he did so with excessive force, compounding his injuries. (Id. at 14.) He believes Hause was retaliating against him.

Upon arrival at the medical room, Moore took his blood pressure and weighed

5

him, but did nothing for his pain.  The handcuffs were not removed and she told him

he already had Ibuprofen for his pain.  Defendant Stephens witnessed this conduct.

Stephens thereafter escorted Plaintiff to his cell with excessive force.  Later that day,

Stephens applied handcuffs too tight and pushed Plaintiff up and down stairs when he

took him to Defendant Persing's office. (Id. at 16.)  When Plaintiff asked for grievance

forms, Persing told him to "shut up."  (Id.)  He also claims that the injury assessment

prepared by Moore was false.

Plaintiff was placed back in general population about January/February 2011.

He claims that he was subjected to retaliatory actions for grievances he had filed.  The

conduct he refers to does not involve named Defendants.  However, he claims that

Defendants Netzband and Thompson were Unit Disciplinary Committee ("UDC")

members, who reviewed incident reports against him and issued retaliatory sanctions

against him in an effort to control his custody classification. (Id. at 21.)

In the Summer of 2011, Plaintiff was taken to the SHU pursuant to a fabricated

misconduct.  He does not allege that any of the named Defendants were involved in

this move.  He does state that after he was there, Defendant Thompson told him they

could keep him in the SHU for 90 days, let him out, and then return him for another 90

day period and use the excuse of an "investigation" to justify their actions.  (Id. at 23.)

As another form of punishment and retaliation, Plaintiff claims that he was not

placed on the "Special Prison Industries Unicor Hiring List" to enable him to pay

sentence fines and assessments. Again, he fails to associate this conduct with any of the named Defendants. He claims he notified the warden's office, as well as Defendant Schantz, of everything taking place. He later alleges that he was removed from his work assignment and intentionally given a Facilities Gate Pass work assignment that was not in compliance with his medical restrictions. (Id. at 25. ) He claims that Defendant Strada implemented this retaliatory "Gate Pass experiment." The job involved heavy lifting and prolonged standing. In June of 2012, when Plaintiff was ordered to carry heavy picnic tables, Defendant Laubaugh ignored his complaints of pain and injury. (Id. at 27.) Plaintiff notified Mr. Weber of the Medical Department, as well as Defendants Miller and Feltman, of his increased pain due to the work and his daily issues with Defendants Laubaugh and Kline. Defendant Dr. Miller prescribed a larger dose of pain medication.

On June 25, 2012, Plaintiff asserts that he was injured when he was negligently and deliberately ordered to operate a tractor that was known by Defendants Kline and Laubaugh to have been damaged several days earlier. Laubaugh denied his request for immediate medical attention, causing him to endure unnecessary pain. Kline and Laubaugh told him that he could wait until sick call the following morning. Plaintiff claims his requests for treatment and a medical report were met with threats of disciplinary action. (Id. at 28-29, 31.)

On June 27, 2012, despite the pain from his injury, Plaintiff was ordered to

perform heavy work by strapping a landscaping machine onto his back and cutting down small trees and large weeds.  When he complained of the pain and his medical restrictions, Kline ridiculed him.  (Id. at 30.)

On July 3, 2012, Plaintiff was ordered to go to Defendant Klinefelter's office. Upon arrival, Klinefelter escorted him to the medical department where Defendant Moore was to perform an injury assessment with respect to the June 25th incident. Plaintiff states that she never examined him and merely typed into his medical record a falsified version of the events he believes Klinefelter told her to report.  He believes these actions were taken to cover up the negligence and abuse of their co-workers and because of a complaint Plaintiff sent to the SIA on July 2, 2012. (Id. at 30-31.)  He also claims that the Safety Department was never notified of the tractor accident, and a "Report of Inmate Injury Form" was never prepared and sent to the Safety Manager. Plaintiff made an inquiry to Defendant Spotts, AHSA, on July 6, 2012, with respect to this deviation from BOP policy.  Spotts did not know why an injury assessment was not done at the time of the injury. (Id. at 33.)

Plaintiff states that he mailed Tort Claim forms to the BOP Regional Office on July 16, 2012, but they have gone unanswered.  He never received an acknowledgment letter, and assumes someone tampered with his mail for revenge and retaliation.

On July 25, 2012, Plaintiff claims that he was assaulted by an Allenwood staff member.  At the time, he was on medical restriction and not working.  He notified

Defendant Correctional Officer Miller and another non-defendant staff member of the assault. They refused to notify the medical department or make a report because Plaintiff "did not look hurt." (Id. at 34.) He was thereafter placed in the SHU under "false pretense," to deter him from making complaints, and to allow staff to continue their conspiracy and harassment against him.

On September 3, 2012, he was subjected to a strip search by Defendant Kresock in front of another inmate. Kresock also degraded Plaintiff because of his obesity. (Id. at 36.) On October 25, 2012, Schafer ordered Plaintiff to climb to the top bunk in violation of his medical restriction, and threatened him with further disciplinary action, if he did not comply. Plaintiff notified Defendant Schantz of these issues but no action was taken. On August 15, 2012, Schantz told Plaintiff that he was aware of everything going on and that there is a standing order that all issues pertaining to Plaintiff go to him. (Id. at 38.) Plaintiff claims that Danner and another officer "corroborated the planed orders" as part of the conspiracy to deny him his basic rights. (Id. at 38-39.) As a result of the foregoing treatment while confined at LSCI-Allenwood, Plaintiff states he suffers from intense anxiety, sleeplessness, shortness of breath, nightmares, nausea and an abnormal heartbeat. (Id. at 37.) Dr. Miller has prescribed him 3200 milligrams of Ibuprofen and offered him anti-depressant medication as a pain reliever substitute.

On August 29, 2012, Plaintiff was taken from his cell and escorted to a cage

near the SHU offices.  He was handcuffed and locked in a cage with no seats.  He was

forced to stand for an hour and a half before he was taken to a room with a chair.

Plaintiff complained to Defendant Danner after the first ten minutes of the

excruciating pain that he was in from standing,  and he reiterated his medical orders

restricting prolonged standing.  (Id. at 38.)

On October 25, 2012, Defendant Schafer ordered Plaintiff to climb to a top

bunk with full knowledge of his medical restrictions.  When Plaintiff was unable to do

as she had ordered, Moore alleged he violated conduct codes.  (Id. at 41.)  As relief for

all of the foregoing violations, Plaintiff seeks compensatory and punitive damages.

## II.    Discussion

In response to the above allegations, Defendants have filed motions to dismiss

and for summary judgment.  Defendants first move to dismiss the complaint for failure

to comply with Federal Rule of Civil Procedure 20 which addresses the matter of

joinder of defendants.  In relevant part, Rule 20 provides that:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or
> in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or occurrences;
> and
>
> (B) any question of law or fact common to all defendants will arise
> in the action.

Fed. R. Civ. P. 20(a)(2)(emphasis added); see also Robbins v. Lamas, 2013 WL

10

1736776 at *1 (M.D. Pa. 2013).

Defendants move to dismiss the complaint, with an opportunity to Plaintiff to amend, because instead of setting forth related allegations and defendants, Plaintiff sets forth over two (2) years worth of claims regarding separate incidents and defendants.  For example, Plaintiff claims Defendant Myers forced Plaintiff to sleep on a top bunk in November of 2010 despite the existence of a lower bunk medical order, and thereafter alleges that in December of 2010, he was served uncooked chicken and provided no replacement meal by other Defendants.  He also sets forth additional claims with respect to being subjected to excessive force by Defendant Hause in early 2011, and claims against other Defendants of improper work assignments and injury on the job in June and July of 2012.  There are also claims against yet different Defendants, with respect to the lack of medical care, an inappropriate strip search in September of 2012, and Plaintiff's placement in a cage cell in August of 2012.

In reviewing the complaint, Plaintiff appears to assert every alleged violation of his constitutional rights from the time he arrived at LCSI-Allenwood until the filing of this action.  The claims mostly appear to be separate incidents occurring at different times and involving different Defendants.  As such, the complaint, as drafted, appears to be in direct violation of Rule 20.  In response to this argument, Plaintiff relies on his claim of the existence of a conspiracy among the Defendants to harm him due to his

11

complaints about his classification placement and the other abuses taking place.

Defendants reply to this argument by emphasizing the general, conclusory nature of

Plaintiff's "grand conspiracy" assertions, and his failure to include any details

supporting such an inference.

In carefully reviewing the complaint, the court must agree that as it stands, the

complaint is not in compliance with Rule 20.  While Plaintiff loosely weaves general

allegations of the existence of a retaliatory conspiracy intermittently through the

complaint, he does not offer any facts supporting the elements of a conspiracy.  In

order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or

conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical

Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.

1989).  The Third Circuit has noted that a civil rights conspiracy claim is sufficiently

alleged if the complaint details the following: (1) the conduct that violated the

plaintiff's rights, (2) the time and place of the conduct, and (3) the identity of the

officials responsible for the conduct.  Oatess v. Sobolevitch, 914 F.2d 428, 432 (3d

Cir. 1990); see also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy is an agreement or concerted action between

individuals.  See D.R. by L.R., 972 F.2d at 1377.  A plaintiff must therefore allege

with particularity and present material facts which show that the purported

conspirators reached some understanding or agreement or plotted, planned and

12

conspired together to deprive plaintiff of protected federal rights. <u>See</u> <u>id.</u>; <u>Rose</u>, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. In the instant case, Plaintiff relies on such bald, conclusory allegations to tie all of his claims together. For example, he makes statements such as "undoubtedly the Correction Officers who were working in the Housing Unit and Facility who were Friends with my Unit Team were influenced and agreed to become a part of this pattern of harassment." (Doc. 1 at 5.)

For all of these reasons, Defendants' motions to dismiss the standing complaint for non-compliance with Rule 20 is well-taken. However, the court is mindful of the fact that Plaintiff is proceeding <u>pro</u> <u>se</u> in this matter, and that the court must afford him an opportunity to correct any deficiencies by the filing of an amended complaint where doing so would not be futile. <u>See</u> <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 111 (3d Cir. 2002).

To limit any prejudice resulting to either party, the following parameters will be imposed.[4] The "amended complaint must be complete in all respects. It must be a

---

[4] The court is cognizant of the fact that this matter has been pending for some time, and that Defendants have devoted effort to the preparation of motions to dismiss and for summary judgment. However, in fairness, Plaintiff does assert the existence

new pleading which stands by itself as an adequate complaint without reference to the

complaint already filed." <u>Young v. Keohane</u>, 809 F. Supp. 1185, 1198 (M.D. Pa.

1992). The amended complaint shall carry the same civil case number referenced

above (3:CV-12-2254), and shall exclusively be limited to the claims set forth in the

original complaint with the exception that Plaintiff may include facts in support of his

conspiracy claim.[5] All other pending motions will be denied as moot, and without

prejudice to refile them, if necessary, following the submission of the amended

complaint.  An appropriate order follows.

---

of a conspiracy in his complaint and must be afforded the opportunity to flesh out his
conspiracy theory in an effort to state a claim and avoid the application of Rule 20,
which might result in the loss of some claims due to the statute of limitations.

[5] Plaintiff is also advised that service was returned unexecuted with respect to
certain Defendants included in the original complaint.  He is required to provide
accurate addresses for these individuals should he choose to include them in his
amended complaint.